Good morning. I'm Tanya Morrow, representing Kelly Gettling. I guess I want to start out by suggesting to this Court that the State's inference in its statement of the law on kidnapping sort of sums up the dispute, I think, in this case. In that statement of the law, the State suggests that the victim in this case, Drake, was moved from a place of freedom to a place of confinement, and there simply is not any evidence in this factual record to support that kind of a position. Just by calling it — calling the conduct that was an attempt to subdue him, meaning sitting on him while they tried to put a sock in his mouth, actually, you know, banding his wrists with duct tape, doesn't qualify for kidnapping in Oregon. If that's true, if that's true, I'm still not sure how you get through the schlup gateway, if I can call it that. Insufficiency of the evidence to establish kidnapping is an issue to be raised on direct appeal, and you lost on that issue. You get through the schlup gateway if there's a change in law that somehow — or a change in facts that somehow demonstrates actual innocence. And the only change you point to is a change in the law that deals with intent. It doesn't deal with what I call the asportation part of the crime. It doesn't deal with how much somebody is bound up or restrained or how far they're moved. It just deals with whether or not one can infer intent from the movement. So don't we have to start from the assumption that there was sufficient evidence of movement? We have both. By the time before this case was final in 2006, we have three cases that came down, Woolleyat and Murray were the two primary ones. Both of them, and of course we had Garcia before that, but both of them address the intent and the asportation. My question is this. Something has to happen after the judgment is final. There has to be some change in fact or change in law after the judgment is final to start the analysis of an actual innocence claim. You argue actual innocence on direct appeal. You argue insufficiency of the evidence, and we're stuck with that, and we don't — we give deference to the State court on that. You have a procedurally barred habeas that you're trying to get through the window on, if you will, with an actual innocence claim. I take it your actual innocence argument says, well, there's a change in law. The Oregon Supreme Court, after my conviction became final, made a new decision with respect to kidnapping, and that new decision said that you can't infer intent to kidnap simply from some set of facts. So it seems to me the only argument you have on actual innocence goes to intent and not to the movement part of the case. That's — so tell me where I'm wrong on that. Well, first off, well, let me just back up and say that we — again, those cases still apply to Mr. Gettling's claims in post-conviction because they came down — they weren't subsequent to his actual conviction, but they came down before the judgment was final. So they apply to whether or not he's innocent of the conviction, and Boosley says all we've got to do is demonstrate that he's innocent of that conviction, and we can do that. And we have done that. So, yes, we've argued and we've demonstrated that neither was there proof of intent to interfere substantially with liberty, which can be proved either through an intent to substantially interfere with movement, or by taking him a substantial distance, or by confining him for this substantial period of time. Neither — there's no facts that support either of those two items that would get you — Can I interrupt you? Excuse me. One of the things — this was a Gilding plea, right? I'm sorry? It was a Gilding — it was no trial. It was a plea. Right. It was an Alpha plea. But one of the items in the record is a statement that the victim, Ryan Drake, gave to the Medford Police Department, ER-154, and which Drake says clearly that he was taped and he was moved and he was moved outside, and the jury — and the — you can't infer from that, from the other evidence, that the truck was being moved, that there was an intent to put Drake into the truck, and there had been movement towards that. You're saying no? No. We can't infer that. The prosecutor themselves, over and again, merely said — used totally equivocal language with regard to that. They suspected that that might have been what was intended. They have no proof. Excuse me. Drake, on page 41, ER-165, he says, yeah, I just told her to call 911. I kept trying to keep my feet. I just fell. And then I had the idea, like I said, I was out there going, trying to load me up in the truck. That's what he — the victim said. Now, so if the victim said that, why doesn't the record support the intent to — it's sufficient? And then the next question I have is, is the Washington case the most recent Washington case on aspiratation? Washington v. State v. Washington. Yeah, I searched. I didn't see anything additional. All right. Well, two questions. One about the statement and the second about the Washington case. What was before the trial court, what was before the postconviction court, was merely the prosecutor's suspicion that maybe that's what they intended to do. And the statement that was put into the postconviction court and relied upon somewhat at sentencing by the defense counsel was merely that they said something about getting the keys to his car. They moved the vehicle. They did not put him in the car. They did not attempt to. There is a — But was this statement of Ryan Drake part of the record in the trial court? No. It was in the postconviction court? It was in the post — well, the interview, the transcript of the interview was in the postconviction court. I believe that's all. Was it in the trial court or — Was in the postconviction court. Only? Only. Yeah, but the trouble is we're not reviewing a record for sufficiency of evidence after a trial. We're trying to figure out whether he can prove innocence. And whether he can prove innocence, I mean, we're not supposed to look at what Drake says. They were going to load me up into the truck. The State can put on evidence at a hearing in Federal court. The issue is whether or not we get through the Boozley standard, the Schlupp standard as described by Boozley, which dealt with a guilty plea. We're allowed to demonstrate innocence with guilty pleas. We have the added advantage in this case because it's an Alford plea. There was no admission of guilt. Yes, and no contest, exactly. The State had to demonstrate evidence. And so appellate counsel was in error, and we've made this claim below, that the appellate counsel was ineffective when he failed both trial and appellate counsel, but especially the appellate counsel, because these cases came down while the case was on appeal. Counsel should —  No. Well, that's the ultimate claim, is that we get relief there, and we also get relief just on the innocence claim raised in post-conviction. But let me try this again, because whether it's a guilty plea or a trial, and this is a very confusing area. I get confused by this area. It's complex. It seems to me that the asportation part of the case, whether he was moved far enough for this to be kidnapping, was not the subject of any new law. Is that correct? Other than any new law that came down after the conviction became final. Yes. The Murray case made clear that it had the movement from place to place. It doesn't have to be a substantial movement in Oregon. That's not the law. It has to be quantitatively different. It has to be from one quantitatively different area. I understand, but there's been no change in law after your client's conviction became final with respect to what's required for asportation, correct? It was made more clear with the Sierra Club after the judgment became final. Right. But you're not making a schlop, boozely claim that there's been a change in law with respect to the element of asportation. I'm not saying that the element of asportation. Yes or no? Not from when we talk about Griffin finality. Right. I'm talking finality at the trial court level, yes. OK, so the change in law that occurred after Griffin finality in this case was the change in law that dealt with whether or not certain evidence of movement was sufficient to give rise to an inference of intent. That's the case that you're depending on for a change in law, are you not? Any other case? Well, both Woolliat, you know, Woolliat suggested that. And then there were subsequent cases that looked at the context of robbery and looked back at the legislative history that was even highlighted in the Garcia case. OK, but my point is that the change in law that you're relying on to get past your procedural bar is a case that says you can't simply infer intent to kidnap from a small amount of movement. Right? You can't, right. Because kidnapping is an intentional, requires, OK. So it seems to me that with respect to actual innocence, and you can't convict somebody if he doesn't have that intent. So with respect to actual innocence, you're limited to that issue, aren't you not? Are you not? You can't relitigate asportation if the law on asportation hasn't changed since your conviction became final. It changed in the sense of before it became final. I guess, I'm sorry, Your Honor, I'm not exactly understanding the fine distinction. Let me ask my ultimate question. I thought you were going to agree with all my lead-ups, and then I was going to ask you the hard question. So let me ask you the hard question. Let me ask you the hard question and see if you can just deal with it. One of my difficulties with this case is the nature of the facts that were admitted. The facts that were admitted is that your client bound up somebody. He was moved some distance. We, Judge Baleson, read you some of the stuff, but that occurred later in the PCR. Why isn't even under the change in law that enough to give rise to an inference of intent to kidnap? So I guess I'm asking, have you really established enough of actual innocence to get through the gateway? Yes. The law subsequent to finality made clear that you – that the aspiratation cannot be incidental to other crimes as well. So we have our Garcia saying the intent can't be incidental to either movement or confinement. In other words, it can't be incidental to other crimes, okay? Then subsequently we have authority making clear that the movement, the aspiratation, also cannot be incidental. That was also a limiting aspect of the – Sure, but I think the incidental means something different than in connection with other crimes. Well, the – The court really didn't say if you're committing four crimes at once, the fact that you're robbing him or assaulting him doesn't mean that the – that the movement isn't enough to establish intent. What the court said was that you've got to do something – you could do something more than sort of incidentally move somebody. Well, I disagree. I think the courts are clear in looking at the legislative history that if you've got movement or you've got confinement for, for instance, 20 minutes – this is in the legislative history – while somebody's robbing somebody, that doesn't qualify to establish the intent to substantially interfere with somebody's liberty. So that's clear law and it's made clear in particular also as to the aspiratation element when the courts said that you can't – it can't be – the movement can't be incidental to another crime as well. Thank you. We've taken you over and I'm about to take you over still further. We've not yet talked about Martinez. Okay. And there are two ways you can get in. One is Schlapp and the other one is Martinez. We haven't got there yet. Now, let me state the law in Martinez and then I'll tell you what my problems are. Martinez tells you that if the underlying habeas claim is trial counsel IAC, the procedural default can be excused if there's IAC by the habeas counsel in not raising the trial counsel IAC claim. And you've got that. Martinez' standard for when that is excused is, number one, if he's represented by counsel rather than unrepresented on his state PCR, state habeas, you've got to show Strickland. And then you've got to show prejudice under the standard of Miller L, which is basically a COA, Certificate of Appealability Prejudice Standard, which is pretty easy to satisfy. So if the only thing you've got to show for prejudice is COA, you may be okay, although I'm not positive. My problem is an analytic problem, not yet to the facts of your case. Because he was represented rather than representing himself on state habeas, he's got to show violation of Strickland. Strickland carries within it its own form of prejudice analysis. So do we have to satisfy the Strickland prejudice analysis as well as the Miller L prejudice? Do you follow the question? I believe that's what the Court has ultimately resolved. I understand Your Honor dissented and suggested that if we just prove, you know, the cause prejudice, then we should be sufficient. I mean, that should be enough for both prongs. But the Court has said, no, there's two prejudice standards we have to meet and has acknowledged, however, that they overlap, just like on ineffective assistance appellate counsel claims. They overlap the prejudice prong. So if we have to show Strickland prejudice, how do you show Strickland prejudice? Well, we show that had post-conviction counsel number one actually pled the innocence claim correctly, pled the other similar claims, like the trial counsel and appellate counsel claims correctly, then the Court would have actually heard that claim. Because the reason the Court didn't hear that claim is because the Court believed it was not pled correctly originally in the first pleading. And so the Court deemed that that argument that was raised in the memorandum and at the trial was waived because it was not in the original petition. So the Court would have heard it. Don't you also have to show that you would have prevailed on it had the Court heard it? I'm sorry. Don't you have to also show that you would have prevailed on that argument had the Court heard it? I mean, yes, you have to show the Court would have heard it, because otherwise you wouldn't have heard it. And it just goes to the merits of the claim. It just goes to show what was the state of the law at the time the post-conviction court would have resolved the claim if it had — if counsel hadn't been ineffective. Yes, but I guess the prejudice question that I have, and I think that underlies Judge Fletcher's question, is don't you also have to demonstrate that had the post-conviction court heard this argument, it more than likely would have ruled in your favor? Yes, I agree. And again, it goes to the merits of the claim at the time the post-conviction court — You said it goes to the merits, and I think you need to show more than it goes to the merits. You need to show that you would have prevailed on the merits. Right, yes. You have to show the difference. The result would have been different. Exactly. So you don't have to show innocence in the Shup's lens, but you do have to show that you might have — that it is more probable than not that you would have prevailed. That I would have prevailed by convincing the post-conviction court that the new law applied and this was not kidnapping. But that — your argument is that the evidence before the trial court was insufficient to show a kidnapping. Is that basically where you come out? Yes, and we've argued that the State — yes, the State did not have sufficient evidence to get this conviction. But, yes, what the State proffered at the Alford plea was insufficient. We're talking IAC rather than innocence. We're talking about whether the lawyer made a mistake in allowing him to do a no-contest plea. And that's a somewhat different question because it's not merely the evidence in the record. It's the evidence that he suspected might come in if he goes to trial. And the evidence that might come in — that might come in that he goes to trial might include, for example, a statement by Drake, well, they were going to put me in the truck. Well, the point that counsel was making was that what was presented was insufficient also. And so, therefore, the plea was not knowing. But you're asserting insufficiency — you're asserting ineffective assistance of counsel by a — in effect, appellate counsel. Right. By PCR counsel. What you're saying is PCR counsel should have raised this issue. Had PCR counsel raised this issue, the Oregon PCR court would have said, you're right, there's not sufficient evidence to support the plea here. And then it would have vacated the plea and sent the case back for further proceedings, right? Yes. And — and I think Judge Bailson's question is, so you really can't assert ineffective assistance of trial counsel, can you? We've argued — well, I understand — Trial counsel says, hey, this is a pretty good plea. I think you're guilty of it. Well, I just — The evidence doesn't establish his innocence. You're just saying the evidence doesn't — doesn't establish his guilt. But there's — is there any — we don't know that the evidence establishes his innocence. So trial counsel may have been terrific here. You're arguing about PCR counsel, are you not? I'm sorry. I thought the question was about — about trial counsel and what he should have done. I guess the question is, you're arguing ineffective assistance of PCR counsel. To get to Martinez, yes. Right. You're not arguing ineffective assistance of trial counsel. If you are, you've got a really tough argument to make. We did — we did both. We argued also that post-conviction counsel should have raised an ineffective assistance of appellate counsel claim, as well as the innocence, and he should have better articulated the idea that post-conviction counsel was ineffective when he allowed him to plea, because the plea was not knowing and intelligent. Well, look, I may be wrong, but I think this is what is called a layered claim. That is, you're — you're looking at two — you have to look at both layers. And assuming you're right about the post-conviction counsel, just assuming that, then we have to look at the trial counsel. And one of the things we have to look at at trial counsel is, was there — is there in the overall evidence, including what was introduced in the PCR court, to show that if the case had gone to trial, was there a likelihood that the defendant would have been convicted? And do you — do you deny that, of kidnapping? Was there a chance? Yes. Yes, Your Honor. You have to. Yes. I believe — You have to. I mean, I don't think you can deny that. No. We are arguing that there was insufficient evidence. But we believe we could — There was. There was not. Wait. Excuse me. There was or was not? There was not. And if — There was not sufficient evidence. There was not sufficient evidence. Okay. You said there was not insufficient evidence. There's no — there's insufficient evidence in the overall record. Is that correct? That's our position. So even if Drake had gotten — your position is even if Drake had gotten on the witness stand and repeated what was in his statement, that would be insufficient to convict your client of kidnapping. Right. Let me ask one more question because I led you astray before. You do agree with me that if you're only asserting ineffective assistance of PCR counsel and not the underlying ineffective assistance of trial counsel, that doesn't get you through the Martinez gateway. In other words, Martinez requires that PCR counsel be ineffective in raising a claim that could only be raised on PCR, which is to say ineffective assistance of trial counsel. Trial counsel or appellate counsel, since the — But was there appellate counsel in this case? Yes. In what way? He had a direct appeal. They raised just a sentencing issue. And in the meantime, these cases came down, and he should have raised an issue about the sufficiency of that Alford plea. That's our argument. And Martinez does go to appellate counsel. Yes, it does. And I guess that's the question I was asking before. Really, your complaint here is with appellate counsel. Yes. Your complaint is with appellate counsel who said, given this record, I'm not raising these claims, as opposed to a trial counsel who said, there's a lot more here than — there may be a lot more here than on the record. I should let this guy plead. Yes. Which leads back to the problem, I guess, of a trial counsel who knows the record is insufficient or may know the record is insufficient but, as Judge Fletcher suggests, may know there's more stuff if he raises it. If I say to the judge, wait a minute, Judge. That's not enough to establish the crime. The judge will say to the prosecutor, either is there more or let's go to trial. Well, the trial counsel did on sentencing argue that the kidnapping was just incidental to the robbery. So he got that. But he just didn't take it where he needed to go. And it definitely became really clear on appeal that it wasn't enough. I think the Court, just briefly for relief, I know we went over quite a bit here, but I think we need to see that. We've made the showing sufficient to get back to the district court. The State then, we can have a hearing. The State gets to bring in whatever evidence it is to either disprove our claim of innocence, but then we also get to brief our appellate counsel claim. So the Court then gets to resolve, and because we get through the default issue, we get the excuse for that. Either way, either through Schlupp or Martinez, and we get to further brief those issues for the Court. Let me ask you one more question on this, and I'm sorry. I know we've taken you way over, but it's very helpful because this is, as you say, a complex area. It's very complex. Why haven't you procedurally defaulted your appellate counsel claim? At the time, we didn't have Van Nigen, right? Is that how you pronounce it? Okay. So I chose and I asked the Court that if we got through, if we got through the Schlupp or we got through the Martinez, to allow us to brief the merits of that claim. We just, because it wasn't clear, there was all that rumbling out there that Martinez was only, you know, limited to trial counsel claims, I just chose to just brief the two, the big two, the innocence and the trial counsel claim. So it's still there, and the Court should allow us to do that briefing since we've subsequently had the additional ruling. Thank you. Thank you very much. Do you have anything to say? May it please the Court, counsel. Greg Rios for Superintendent Jeff Primo. And I think I'll just kind of start where the action is, and I'll start with appellate counsel. There is no appellate counsel claim available here. This is a guilty plea. Oregon law, ORS 138050, is quite clear. There are very limited grounds you can appeal when you have a guilty plea, and mostly it's just sentencing error. Is it forbidden under Oregon law to raise IAC on direct appeal? Yes. And that's exactly the reason. Flat out by statute? I don't know that a statute says it. However, we do have, at least as to guilty pleas, we have the statute that limits the scope of reviewability, and then we have the postconviction statutes that provide that proceeding, that cause of action for collateral cases. And the Oregon cases say that the rationale behind ORS 138050 is that the place to challenge guilty pleas collaterally is in postconviction. So I understand that. My recollection is the Oregon supreme court at some point had said, like a number of supreme courts have said, that IAC can only be raised in a postconviction review proceeding because otherwise you have the problem of perhaps of the same counsel representing somebody on appeal arguing his own ineffectiveness. And I'm sorry. And you are reminding me now there are actually cases that say you can't raise IAC. It's just flat out prohibited. Right. The cases talk about that. That then simply takes off the table IAC of appellate counsel. That, yes, and the statutory, I mean, it would, it just, the court, the appellate courts wouldn't have jurisdiction over that claim. And then maybe a more minor point is that there was no, there was no COA issued on the ground that was asserted that involved appellate counsel challenging the sufficiency of the evidence. But what it boils down to with the actual innocence claim and why Petitioner can't carry his burden that no reasonable juror would have convicted him of kidnapping under the law today or under Woolley at is it's a very fact-dependent question. Petitioner and the superintendent have a different version of a set of facts. And I think the way they are being characterized looks a lot like different sides in a closing argument. Are there going to be conflicting inferences from this evidence? Maybe. But who decides what inferences can properly be drawn from the law? But the fact finder. That's what a jury does. And to kind of broaden, I think, some of the facts that I emphasized in my brief, because I did discover an exhibit that is not in the SCRs, but is in the habeas record, and that's Exhibit 117, and it's a police report. The facts are fleshed out a little bit more. And those facts include Leffingwell, when he was first interviewed by the police, said that he took the truck because Petitioner wanted to take the victim somewhere. He actually said that. And when Leffingwell — sorry, not Leffingwell, but when the victim is taken, sort of escorted out of the house and into the alley, before that, Petitioner says, get the keys, and then what happens is the neighbor sees, and what I picture this as being is there's the duplex here where the crime occurred, and there's a house, and there's an alley between, and there's a neighbor in the alley watering, and she sees him coming out and becomes concerned, then sees Leffingwell and Petitioner come out and sort of look at what the victim is doing, and then she sees someone drive a truck to the alley, and when they see her kind of turn around and go. So, I mean, the most reasonable inference there is they were not stealing his truck. They didn't want this bloody victim who's going to be discovered by somebody to talk to someone, and it's going to be pretty easy to figure out who the assailants were. Can you help me out with what I sort of think is a chicken-and-egg problem here? The question for the district judge is whether the case was procedurally barred, the initial question, right? Correct. And so the arguments about whether it fits through one gateway, the Schlupp gateway, as I call it, or the Martinez gateway, are they based on the evidence that was in the trial court, or do you get to bring additional information to the attention of the trial judge? You see, it seems your opponent is saying, and it has some appeal to me, that those are merits arguments once you get through the gateway. But looking at whether or not one gets through the gateway, one can only look at the evidence that was in the record in the State proceeding. Do you disagree with that? Well, Petitioner still needs to no, I don't. You're citing something that wasn't in front of the trial judge when he accepted the plea. And we say, well, it wasn't in front of the trial judge, but I don't think that's kind of points why these points to why cases that are in this posture are so difficult. That's right. And that's what I'm wondering about. In other words, if the judge said, you're right, I'll hear this actual innocence claim, or I'll hear this claim of ineffectiveness of assistance of trial counsel, you could walk in with this release report and say this is a silly claim. Of course he pleaded him guilty. There was plenty of evidence that they were going to kidnap, and trial counsel didn't do a bad job at all. But in terms of analyzing whether or not the Petitioner gets through the schlup gateway, can we look at evidence that wasn't in the record in the trial court? And when we're saying the trial court, we're talking about the court that took the plea. Right. Well, I think you absolutely can, because one thing I think that you have to consider is what the State could have possibly proven, not just you don't have a closed record with a guilty plea, because a guilty plea is simply whether the judge thinks that there are sufficient facts to accept the plea. The State has no state. Almost by definition, a schlup gateway claim requires evidence outside of what's in the trial court record, because somebody's coming in saying, listen, I am actually innocent, and this works sometimes for the defendant and sometimes works against the defendant. But if you're trying to get through the schlup gateway, you're not limited to the evidence in the trial record. You're saying, I'm actually innocent. Here's the evidence that I'm actually innocent. Some of it later discovered, and I should now be accused of using the procedural default. That makes good sense to me. My question really related to when somebody says, no, the law has changed. So my plea was insufficient. The facts tendered to the trial judge were insufficient under the new change in law to establish my guilt. And I'm trying to figure out whether under that circumstance you say, yeah, but we had additional facts we could have tendered had we only known. This is a different area of the law, and I'm just not sure how we deal with that. It's a vexing area of the law, Your Honor. And I think in the most, in most circumstances, what you see in these cases is you don't have the State coming in and saying and disputing it, because it's just so obvious they can't. So as with Bowsley, you know, you have the use or possess. I mean, you can just look at it and see. This Court's case in Vazgen, I mean, it was whether compelling prostitution, whether you have to procure the victim for another person. In that case, it procured the victim, the defendant procured the victim for himself. Clearly, you just look at it. I think Amalillo, it was whether moving drugs to Guam was another jurisdiction, because they're both in the United States. I mean, just know it when you see it. This is not one of those cases. If you look at the case law that I've set forth on pages 18 and 19 of my brief, this is a very difficult question for Oregon courts, and they are still hashing it out case by case. I would like to briefly turn to Martinez and just cut to the heart of the matter as to whether you focus on trial counsel or post-conviction counsel. Certainly, you do have to go through the layers, but at bottom, you have to have a viable IAC, trial IAC claim to prevail. I mean, I think that that's sort of undisputed here. Now, when we're looking at what the state of the law was at the time of the plea, we don't even have Wooliette yet. It's pre-Wooliette. And if we take appellate counsel out of the picture, then really it's only what would the trial counsel known at the time that he was trying to put this plea together. Another source of evidence that unfortunately didn't make it into the excerpt of records, but I think might be helpful to this Court, I think it's Exhibit 117, and it was the affidavit of the trial counsel. And he said, as to he said that he was encouraging his client to plead guilty so they could get leniency. And there would have been leniency available because the judge had discretion about whether the sentences were going to be consecutive or concurrent. So he could have shaved off a lot of time if he got concurrent sentences. But his – what trial counsel said is that his client insisted on pleading no contest instead of not guilty. And so he, by not taking his advice, his client put himself in a worse position, but according to trial counsel, that was his decision. Kennedy. Well, but that causes another problem on IAC. That is to say, if the trial counsel says, listen, plead guilty because that gives us a chance for concurrent sentences, he then insists on pleading no contest. Well, at that point, the choice in front of the counsel is either I get my client to take a no contest plea or I go to trial. But if it's true that the no contest plea is likely to produce consecutive sentences, what's the downside if we're going to trial? I see I'm over time. May I answer that question? Yes, but that's not a good reason to not answer the question. I will answer the question with leave. Sure, that may be part of the calculus, but there was more complicated calculus here in play. And the fact that hasn't been discussed and is in the excerpt of record, I think at page 25, it was the postconviction court's findings, is that the reason the plea happened is they had Leffingwell as a witness. Leffingwell pled guilty. Once Leffingwell turns, they've got problems. I think that was sort of what motivated. And I want to lead the Court to believe that it was as explicit in the affidavit that we were trying to get out from under consecutive or concurrent, but the counsel said leniency. So they had Leffingwell against them. They had possibly this opportunity. And because we weren't sitting there when the attorney and his client were having probably pretty difficult discussions on the morning of trial on how to proceed, we don't know how that advice to plead not guilty turned into no contest. Which you're still on your feet here, so I'm going to ask you another question. Can you address the actual innocence claim on its merits? I'm having some difficulty figuring out why this supposed change in the law would have changed the result on the facts in this case. Would it have? No. I mean, it would have been a jury question, I think. As to whether or not he had sufficient intent? As to whether he had sufficient intent. And my question is on the facts in the plea, in the proffer, before the trial judge, are those facts sufficient to establish intent even under the new Oregon decision? Under — and if we're saying the new Oregon decision and saying — and just eliminate Chiwulea, or are we going all the way up to — Well, go all the way up. Give the defendant the best — the best situation that he could argue for in this case. Under the current state of the law, are the facts before the trial judge sufficient to allow a finder of fact to make a finding of intent? Well, I'll start by just sort of quibbling with the premise that the record should be closed. Our position is that the record should not be closed. I understand. But if the record was closed, that would make maybe a more difficult question on the conduct element of aspirtation. I do not think that it would — that they would prevail under the intent to substantially interfere with his liberty, because — Because he was taped up. Because he was taped up. They tried to — I mean, they tried to — they tried to keep him from moving. And I know that my opponent wants to characterize this as some sort of mutual combat, but it absolutely was not. I mean, let — Drake told the police that he was not engaged in any offensive fighting whatsoever, that he was just trying to get out of there. So suffice to say that the beating may have been a lot less if he just took it. But he did not take it because he was trying to get out of there. So you have all the evidence of the different means they had to subdue him. And I think that's exactly what they were trying to do. You have the binding of the hands. You have the attempts to keep him from screaming by putting something in his mouth. And that's actually why Petitioner took the knife and put it to his throat, to get him from stopped screaming. He hit him in the head to get him to stop screaming. So all of these — all of this conduct was directed at keeping him still so they could do whatever they were going to do. And that absolutely shows an intent to substantially interfere with his liberty and the fact that he was lured there under false pretenses. He was brought there. There was a plan to ambush the victim. But that doesn't mean kidnap. That just means they wanted to bring him in so they could beat him up. Right. That by itself doesn't help you. But I think that is — could be a piece of evidence showing an intent to take him to a confined place. Luring is not kidnapping. Right. And I'm not suggesting it is. I'm just saying that if you're looking at all of the facts, that that can be part of the evidence. We just ask that you affirm the district court's denial of habeas relief. Thank you. Well, we took you well over. Let's put a minute on the clock. Two seconds. I do believe that we have to look at the trial court record with regard to the schlup. And I would tell you that anything that's in that police report is undermined by the prosecutor's statement, equivocal statement. I believe, I don't know, I suspect, I'm not quite sure whether they were intent to put him in that vehicle. So this is why it's got to be litigated and it's got to go back to — it should go back to the Federal court and we can litigate whether or not there was actually some intent to put him in that vehicle, because the prosecutor suggests they don't have that evidence. Sufficiency, of course, is the purview of the Federal court. So we have to get into muddy areas of State law all the time. And he was subdued. The taping was so they can get into his pockets and take his money and take his keys. That's what it was about. It was about the robbery. Thank you. Thank you very much. Thank both sides for your helpful arguments.
judges: Baylson, Fletcher, Hurwitz